**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**SAMANTHA HARDMON** **PLAINTIFF**

**V.** **NO. 4:25-CV-203-DMB-JMV**

**SNF MGR LLC d/b/a Avardis Health; and 340 DESOTO AVENUE EXT OPERATIONS, LLC d/b/a Greenbough Health and Rehabilitation Center** **DEFENDANTS**

# OPINION AND ORDER

Samantha Hardmon asserts claims of race discrimination, sex discrimination, sexual harassment/sexually hostile work environment, and retaliation under Title VII and/or 42 U.S.C. § 1981 against SNF MGR LLC d/b/a Avardis Health and 340 Desoto Avenue Ext Operations, LLC d/b/a Greenbough Health and Rehabilitation Center. The defendants move to dismiss all Hardmon's claims for failure to state a claim. Because Hardmon sufficiently alleges all her claims except for race discrimination and sex discrimination, the motion to dismiss will be granted in part.

## I
## Procedural History

On December 17, 2025, Samantha Hardmon filed a complaint in the United States District Court for the Northern District of Mississippi against SNF MGR LLC d/b/a Avardis Health, and 340 Desoto Avenue Ext Operations, LLC d/b/a Greenbough Health and Rehabilitation Center. Doc. #1. The complaint contains five counts: "Count I: Violation of Title VII – Race Discrimination;" "Count II: Violation of 42 U.S.C. § 1981 – Race Discrimination;" "Count III: Violation of Title VII – Sex Discrimination;" "Count IV: Violations of Title VII – Sexual Harassment/Sexually Hostile Work Environment;" and "Count V: Violation of Title VII – Retaliation." *Id*. at 13–15. As relief, Hardmon seeks back wages, reinstatement or future pay in

lieu of reinstatement, compensatory damages, punitive damages, attorney's fees, lost benefits, pre-judgment and post-judgment interest, and costs and expenses. *Id.* at 16.

On February 20, 2026, the defendants filed a motion to dismiss Hardmon's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Doc. #18. Hardmon responded in opposition on March 20, 2026.[2] Doc. #24. The defendants replied on April 6, 2026.[3] Doc. #36.

## II
## Standard

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) asserts a "failure to state a claim upon which relief can be granted." To survive dismissal under the Rule 12(b)(6) standard, "a complaint must present enough facts to state a plausible claim to relief. … A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)). However, the Court "do[es] not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Great Lakes*, 624 F.3d at 210). In evaluating a 12(b)(6) motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."

---

[1] The Court granted the defendants' requests for extensions to respond to Hardmon's complaint. Docs. #7, #10, #12. The defendants initially filed two joint motions to dismiss on February 17 but they were terminated or denied for procedural reasons, with the Court allowing the defendants to refile the joint motion that was denied no later than February 20. Doc. #17.

[2] The Court granted Hardmon's request to extend her response deadline to March 20. Doc. #23.

[3] The Court granted the defendants' request to extend their reply deadline to April 6. Doc. #31.

*Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020) (per curiam) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

## III
## Factual Allegations

Samantha Hardmon is a black female who SNF MGR LLC d/b/a Avardis Health ("Avardis") and 340 Desoto Avenue Ext Operations, LLC d/b/a Greenbough Health and Rehabilitation Center ("Greenbough") hired as a registered nurse supervisor on January 21, 2025. Doc. #1 at 2. During March 2025, Nursing Home Administrator John McDaniel, a white male, began making unwanted sexual advances toward Hardmon. *Id.* On or around April 24, 2025, Hardmon reported McDaniel's sexually harassing comments and behavior to Human Resources Representative Cynthia Hollingsworth. *Id.* at 3. Hollingsworth responded that another nurse, Phyllis Reddix, had also reported McDaniel for sexual harassment; after Reddix reported McDaniel, she was terminated; and if Hardmon reported the sex harassment, she would likely be terminated because upper management did not want to get rid of McDaniel because he makes money for the company. *Id.* at 3–4.

On or around June 6, 2025, Hardmon warned a coworker, a new nurse, Mary Grace Braxton, a white female, to be careful about going into McDaniel's office because he tended to be inappropriate. *Id.* at 4. On June 10, 2025, McDaniel suspended Hardmon's employment, allegedly because she made a false allegation to Braxton. *Id.* Hardmon heard from other employees that McDaniel planned to give her position to Braxton. *Id.* Hardmon learned, however, that corporate human resources had been unable to substantiate the basis for her suspension. *Id.* On June 13, 2025, Hardmon was allowed to return to work, but she was issued a write-up based on a false

premise concerning a resident's care plan.[4] *Id.* at 4–5.

On June 17, 2025, McDaniel, Director of Nursing Latosha Sanders, and Human Resources Personnel in Training Lisa Fletcher phoned Hardmon and informed her that she was terminated, allegedly due to attempting to make a staff member change their witness statement after an interview had been conducted. *Id.* at 5. After she was terminated, Hardmon learned that her position was replaced by Braxton. *Id.* at 6.

On August 15, 2025, Hardmon filed an EEOC charge of sex discrimination, sex harassment, retaliation, and race discrimination against Greenbough. *Id.*; Doc. #1-3. The same day, Hardmon filed an EEOC charge of sex discrimination, sex harassment, retaliation, and race discrimination against Avardis. Doc. #1-1. The EEOC issued a right-to-sue letter to Hardmon on November 13, 2025, as to the EEOC charge against Greenbough. Doc. #1-4. As to the EEOC charge against Avardis, the EEOC issued Hardmon a "Dismissal" letter stating that "[she was] not in an employment relationship with [Avardis]." Doc. #1-2.

**IV**
**<u>Analysis</u>**

The defendants argue that Hardmon's claims should be dismissed because (1) Hardmon fails to sufficiently allege race discrimination under Title VII and 42 U.S.C. § 1981 in Count I and Count II; (2) Count III's Title VII sex discrimination claim contains only conclusory assertions of sex discrimination without facts plausibly linking any adverse action to sex; (3) Count IV's Title VII sexual harassment/sexually hostile work environment claims lacks plausible facts to show severe or pervasive harassment; (4) Count V's Title VII retaliation claim does not show that Hardmon engaged in protected activity; and (5) Avardis was not Hardmon's employer. Doc. #19

[4] On the afternoon of June 13, 2025, Hardmon was called into a meeting with McDaniel, Fletcher, and Corporate Human Resources Consultant Amanda Dionne, and issued a final written warning for failure to follow the resident's care plan. Doc. #1 at 9.

at 3, 5, 6, 8, 10.

Hardmon responds that she plausibly alleged race discrimination under Title VII and § 1981, and sex discrimination under Title VII; plausibly alleges severe or pervasive harassment; pled sufficient facts to show she engaged in protected activity; and sufficiently pled a joint employment relationship with Avardis. Doc. #25 at 4, 6, 8, 10, 13.

In reply, the defendants generally reassert all their main arguments. Doc. #36 at 2–6.

**A. Race Discrimination**

The defendants argue that "[r]egardless of whether [Hardmon] seeks to establish race discrimination, under Title VII or 42 U.S.C. § 1981, her claims for race intentional discrimination fail" because "[her] conclusory allegations fail to meet the basic threshold under the federal pleadings standard and fail to state a claim upon which relief may be granted." Doc. #19 at 3. While the defendants concede that Hardmon suffered an adverse employment action, they argue that she "has failed to plead any facts indicating less favorable treatment than others 'similarly situated' outside of the asserted protected class;" and since "the Complaint does not contain any facts about any comparators at all," her race discrimination claims should be dismissed. *Id.* (quoting *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021).

Hardmon argues that the "[d]efendants incorrectly assert that [her] race discrimination claims must fail because she did not identify a similarly situated comparator" because they "improperly apply the *McDonnell Douglas* evidentiary standard at the pleading stage" and "ignore[] that replacement by an individual outside the protected class is an independent, alternative method of satisfying the very framework Defendants rely upon." Doc. #25 at 4. Pointing out that she only needs to plead two elements—"(1) an adverse employment action, and (2) taken against a plaintiff because of her protected status"—and that it is undisputed that she

suffered adverse employment actions when she was suspended and terminated, Hardmon maintains that the allegation "that she, a Black female, was suspended and terminated under false, pretextual circumstances manufactured by the Nursing Home Administrator" and "immediately following her suspension and termination, her position was given to a newly hired white female nurse" is "the very definition of a plausible claim for race discrimination." *Id.* at 5, 6.

The defendants reply that "there is not a single factual allegation that would support a race claim" in Hardmon's memorandum;" "[w]hile [Hardmon's] Complaint obviously alleges an adverse employment action inasmuch as she was terminated, she provides absolutely *no facts* to connect the adverse employment action to her race;" and "[t]he fact that [Hardmon] was allegedly replaced by a white individual is relevant but not sufficient to state a claim for race discrimination." Doc. #36 at 2–3.

"Title VII forbids employers from discriminating against an employee 'with respect to her compensation, terms, conditions, or privileges of employment because of her race.'" *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 648 (5th Cir. 2025) (quoting 42 U.S.C. § 2000e-2(a)(1)). 42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory … to the full and equal benefit of all laws and proceedings … as is enjoyed by white citizens …." The analysis for a Title VII race discrimination claim is the same as for a § 1981 race discrimination claim. *See Abdallah v. Mesa Air Group, Inc.*, 83 F.4th 1006, 1013 n.5 (5th Cir. 2023) ("The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims.") (quoting *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017)).

Under Title VII, "although plaintiffs do not 'have to submit evidence to establish a prima facie case of discrimination at this stage, they must plead sufficient facts on all of the ultimate

elements of a disparate treatment claim to make their case plausible.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Chhim v. Univ. of Tex. at Aus.*, 836 F.3d 467, 470 (5th Cir. 2016)). "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an 'adverse employment action,' (2) taken against a plaintiff 'because of her protected status.'" *Id*. at 767 (emphasis omitted) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

It is undisputed that Hardmon suffered an adverse employment action when she was terminated. *See Hamilton v. Brookhaven Sch. Dist.*, 79 F.4th 494, 502–03 (5th Cir. 2023) ("To plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment."). However, Hardmon's complaint does not allege that she was terminated because of her race. *See McLin v. Twenty-First Judicial District*, 79 F.4th 411, 417 (5th Cir. 2023) ("[A] complaint must plausibly set out facts that the 'defendant took the adverse employment action against a plaintiff *because of* her protected status.'") (quoting *Raj*, 714 F.3d at 331). Rather, Hardmon's complaint alleges that the reason the defendants gave for her termination "is false and was a pretext for retaliation against her after she refused to comply with Mr. McDaniel's sexual advances and after she reported the sex harassment to Ms. Hollingsworth." Doc. #1 at 6. While Hardmon does allege she was replaced by someone outside her protected class, she still must allege that her termination was because of race. When a complaint lacks allegations connecting an adverse employment action to the plaintiff's protected status, the plaintiff fails to state a claim for disparate treatment. *See Raj*, 714 F.3d at 331 ("[The plaintiff] failed to state a claim for disparate treatment under Title VII" because the "complaint and speculation did not allege any facts, direct or circumstantial, that would suggest [the defendant's] actions were based on [the plaintiff's]

race.”).

Hardmon also asserts that her suspension was an adverse employment action, Doc. #25 at 5, which the defendants do not appear to concede. It is well established that suspension without pay is an adverse employment action. *See Price v. Wheeler*, 834 F. App’x 849, 854, 857 (5th Cir. 2020) (fourteen-day suspension without pay is considered adverse employment action for prima facie case of discrimination); *Hypolite v. City of Houston*, 493 F. App’x 597, 607 (5th Cir. 2012) (“a temporary suspension without pay is an adverse employment action” in retaliation and discrimination context.). Hardmon’s complaint does not specify whether her suspension was with or without pay. However, assuming Hardmon’s suspension is an adverse employment action, she still fails to allege any facts that her suspension was due to her race. Her complaint simply alleges that McDaniel suspended her for allegedly making a false statement, and that such statement was not false.

Hardmon’s race discrimination claims will be dismissed for failure to state a claim.

**B. Sex Discrimination**

The defendants argue that Hardmon fails to “alleg[e] specific facts showing that any adverse action was taken because of her sex;” “[her] allegations reflect work-related reasons proffered by the employer for the discipline and termination;” and “the Complaint does not identify a similarly situated male comparator who was treated more favorably for similar conduct … nor other nonconclusory facts supporting a plausible inference that sex, rather than the articulated reasons, motivated the suspension, discipline, or termination.” Doc. #19 at 5.

Hardmon responds that “comparator evidence is not the exclusive method for proving discriminatory intent, as a plaintiff can survive a motion to dismiss by simply alleging facts that directly or circumstantially connect the adverse action to her protected class;” and “[t]aking the

well-pleaded allegations as true, terminating a female employee based on fabricated infractions engineered by the very male supervisor whose sexual advances she just rebuffed constitutes a highly plausible, textbook claim for sex discrimination." Doc. #25 at 7–8.

The defendants reply that "[Hardmon's] argument that the allegations that she was terminated for refusing sexual advances do not support a sex discrimination claim;" and "[Hardmon] essentially conflates a sex discrimination claim with a sexual harassment claim." Doc. #36 at 3.

"Under Title VII, it is an unlawful employment practice for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex.'" *Hamilton v. Dallas Cnty*, 79 F.4th 494, 502 (5th Cir. 2023) (quoting 42 U.S.C. § 2000e-2(a)(1)). To sufficiently plead a Title VII sex discrimination claim, "a plaintiff must allege facts plausibly showing (1) an "adverse employment action, (2) taken against a plaintiff because of her protected status." *Id*. (internal quotation marks omitted) (quoting *Cicalese*, 924 F.3d at 767). While the first element is satisfied by Hardmon's termination, she again fails to allege facts that connect her termination to her protected status. Rather, Hardmon alleges that her termination resulted from her refusal to comply with McDaniel's sexual advances. Doc. #1 at 6. Such allegations are properly addressed as her claim for sexual harassment, not sex discrimination. *See Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1279 n.4 (5th Cir. 1994) ("[S]exual harassment and disparate treatment [based on sex] are distinct."). Because Hardmon did not allege her termination (or suspension) was because of her sex,[5] her sex discrimination claim will be dismissed.

[5] Given this, the Court need not address the defendants' argument that Hardmon does not identify a similarly situated male comparator.

### C. "Sexual Harassment/Sexually Hostile Work Environment"

The defendants argue that Hardmon "offers conclusory assertions and recitals of the elements of a cause of action that fail to allege severe or pervasive harassment because of sex;" "[e]ven if [Hardmon's] allegations are taken as true, per the rationale in *Shepard* [*v. Comptroller of Pub. Accounts*, 168 F.3d 871 (5th Cir. 1999)], these allegations do not represent behavior that is persistent, hostile, or abusive;" and "[Hardmon] does not allege any physical contact or a series of incidents sufficiently continuous or concerted that altered the conditions of her work environment." Doc. #19 at 6, 8.

Hardmon responds that "the Complaint details a continuous, targeted escalation of highly inappropriate conduct concentrated over a short period in March and April 2025;" "McDaniel's harassment escalated into physical intimidation and humiliation;" and HR "warned [her] that she would likely be terminated for complaining" which "easily surpasses the pleading threshold for a severe or pervasive hostile work environment." Doc. #25 at 9–10.

The defendants reply that "[w]hen breaking down [Hardmon's] allegations in isolation, none of the incidents can remotely be characterized as 'severe;'" while "in her brief, [Hardmon] asserts that she alleged a 'barrage' of sexual propositions in her Complaint … [Hardmon's] *actual* allegations center on five isolated incidents;" and "nothing happened after she told McDaniel on April 8, 2025 that she wanted to keep things professional at work." Doc. #36 at 4–5 (footnote omitted).

"Title VII recognizes two types of sexual harassment claims: *quid pro quo* claims and hostile work environment claims." *Cerda v. Blue Cube Operations, L.L.C.*, 95 F.4th 996, 1003 (5th Cir. 2024).

### 1. Quid pro quo

"For a *quid-pro-quo* claim, an employee must show that the acceptance or rejection of a supervisor's alleged sexual harassment resulted in a tangible employment action." *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 220 (5th Cir. 2023) (internal quotation marks omitted) (quoting *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 772 (5th Cir. 2009)). "A 'tangible employment action' is one that amounts to a 'significant change in employment status,' like 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*. (quoting *Alaniz*, 591 F.3d at 772). "When a supervisor is the harasser, the employer is 'vicariously liable *per se*' if there is a 'nexus' between the harassment and the tangible employment action. *Id*. (citing *Casiano v. AT&T Corp.*, 213 F.3d 278, 283–84 (5th Cir. 2000)).

Here, Hardmon suffered a tangible employment action when she was terminated and presumably when she was suspended. *See Wallace*, 57 F.4th at 221 ("Wallace's suspension and termination … are both tangible employment actions."). And Hardmon alleges that her termination was the result of refusing to comply with McDaniel's sexual advances. Doc. #1 at 6. Given these allegations, Hardmon sufficiently pled a quid pro quo sexual harassment claim.

### 2. Sexually hostile work environment

Hardmon alleges that the defendants "violated Title VII … by subjecting [her] to a sexually hostile work environment." Doc. #1 at 15.

> In order to state a hostile work environment claim, a plaintiff must plead facts showing that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) defendant knew or should have known about the harassment and failed to take remedial action.

*Hanna v. Cangshan Cutlery Co.*, 767 F. Supp. 3d 384, 389 (W.D. Tex. 2025) (citing *Hackett v.*

*United Parcel Serv.*, 736 F. App'x 444, 450 (5th Cir. 2018)). To satisfy the fourth prong, the conduct in question must have been "'sufficiently severe or pervasive' to create 'an abusive working environment.'" *Hackett*, 736 F. App'x at 450 (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)). "This involves a multifactor analysis, looking to the frequency and severity of the actions, whether danger or humiliation (not simply personal offense) resulted, and whether the conduct interferes with work performance." *Id.*

Hardmon's alleges in her complaint that "McDaniel began talking about how he has a high sex drive and that he sometimes cheats on his wife;" "began to ask [her] if she likes white men and if she had ever cheated on her husband;" "told [her] he was staring at her lips because he cannot hear very well;" "told her she has cute lips, and he began to lick his lips while staring at her;" and "called [her] into his office [and] told her to come behind his desk to look at an email, and he pulled a chair close beside his own." Doc. #1 at 3. Hardmon cites no authority that suggests this behavior amounts to severe and pervasive conduct. But even accepting these allegations as true, this conduct falls short of the level of harassment required for such claim. *See Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317 (5th Cir. 2004) (summary judgment for defendants appropriate where coworker remarked to plaintiff about another coworker's body, slapped plaintiff once on the behind with a newspaper, grabbed/brushed plaintiff's breasts and behind, held plaintiff's cheeks and tried to kiss her, asked plaintiff to get to the office early so they could be alone, and stood in door of bathroom while plaintiff washed her hands); *Shepherd v. Comptroller of Pub. Accs.*, 168 F.3d 871 (5th Cir. 1999) (affirming summary judgment where coworker made offensive comments about plaintiff's body, including "your elbows are the same color as your nipples;" stood over plaintiff's desk on several occasions and tried to look down her clothing; touched her arm several times, including rubbing his hand along her arm; and on two occasions

patted his lap and said, "here's your seat"). Hardmon's sexually hostile work environment claim will be dismissed.

**D. Retaliation**

The defendants argue that "[Hardmon's] allegations … do not show that she engaged in protected activity since she could not have reasonably believed that she was reporting conduct prohibited by Title VII." Doc. #19 at 9.

Hardmon responds that "[a]ny reasonable person in [her] position would believe that reporting the top administrator for discussing his high sex drive, interrogating her about white men and infidelity, staring at her lips, licking his own lips, and attempting to physically isolate her behind his desk constituted opposing unlawful conduct;" "a lay employee is not required to perform a complex legal analysis of severe or pervasive jurisprudence before reporting a predatory boss to Human Resources;" and "[n]o reasonable person could possibly hear a corporate HR representative confirm that supervisor is a protected sexual predator and conclude that Title VII is not implicated." Doc. #25 at 12.

The defendants reply that "[Hardmon] mischaracterizes [their] arguments" and that "[w]hat [they] argued was that [she] could not establish that she actually engaged in protected activity unless she reported activity that one would *objectively* reasonably believe to be a violation of Title VII." Doc. #36 at 5.

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in activity protected under the statute, (2) her employer took an adverse employment action against her, and (3) a causal connection exists between the protected activity and the adverse action." *Lewis v. Bd. of Supervisors of La. State Univ.*, 134 F.4th 286, 295 (5th Cir. 2025) (citing *Feist v. La. Dep't of Just.*, 730 F.3d 450, 454 (5th Cir. 2013).

Here, the parties dispute whether Hardmon engaged in protected activity. "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Id.* (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). "[A] plaintiff need not demonstrate that the practice was *actually* unlawful for his opposition to be a protected activity; rather, it is enough that the plaintiff *reasonably believed* the practice was unlawful." *Scott v. U.S. Bank Nat'l Assoc.*, 16 F.4th 1204, 1210 (5th Cir. 2021). "When examining whether an employee's belief that his employer engaged in an unlawful act was reasonable, a court must ask whether a person, 'not instructed on Title VII law as a jury would be, [could] reasonably believe that she was providing information about a Title VII violation." *Id*. at 1211 (alteration in original) (quoting *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 242 (5th Cir. 2016)). "This inquiry is informed by the nature of the statement forming the base of the alleged discrimination, whether the statement was directed at a particular person or group of persons, whether it came from a person with supervisory authority, and the setting where the employee's complaint was voiced." *Id*.

Hardmon alleges that she reported McDaniel's to Human Resources for sexual harassment. Doc. #1 at 3. Sexual harassment is a violation of Title VII. *Cerda*, 95 F.4th at 1003. Because Hardmon reasonably believed she was reporting a Title VII violation, she engaged in protected activity and her retaliation claim will not be dismissed.

**E. Joint Employers**

The defendants argue that Avardis must be dismissed because "Avardis and Greenbough are two separate entities[ and w]hile [Hardmon's] Complaint makes a number of allegations against Greenbough that would suggest that Greenbough was [her] employer … she makes no similar allegations against Avardis;" and she alleges no facts to support the theory that the two

entities were her "joint employer." Doc. #19 at 10–11.

Hardmon responds that the defendants "improperly attempt[] to litigate an evidentiary summary judgment standard at the pleading stage;" "[she] need only plausibly allege facts that raise a reasonable expectation that discovery will reveal evidence of a joint employment relationship;" and "[she] has plausibly alleged that a corporate management entity, specifically Avardis, exercised direct, substantial control over her hiring, discipline, and termination" which "more than satisfies the pleading requirements for a joint employer theory under Title VII." Doc. #25 at 13, 14–15.

The defendants reply that "[Hardmon] did not allege a *single fact* in her Complaint that would suggest that Arvadis [sic] was her employer;" "[e]ven though [Hardmon] alleged in her EEO charge that Arvadis [sic] and Greenbough were 'joint employers,' this allegation is conclusory and not factual;" "[h]er allegation that 'defendants hired plaintiff' is likewise conclusory;" "[a]nd, [Hardmon's] sending a group text that may have included some Arvadis [sic] employees does not turn Arvadis [sic] into [her] employer." Doc. #36 at 6.

"Title VII defines an 'employer' as 'a person engaged in an industry affecting commerce who has fifteen or more employees …, and any agent of such person ….'" *Muhammad v. Dallas Cnty. Comm. Supervision and Corrections Dept.*, 479 F.3d 377, 380 (5th Cir. 2007) (quoting 42 U.S.C. § 2000e(b)). "[The Fifth Circuit] has held that the agent 'must be an agent with respect to employment practices' and would be limited to supervisory or managerial employees to whom employment decisions have been delegated." *Id.* at 383 (footnote omitted) (quoting 42 U.S.C. § 2000e(b)); *Deal v. State Farm Cnty. Mut. Ins. Co.*, 5 F.3d 117, 119 (5th Cir. 1993)). "[The Fifth Circuit] applies a two-step process for determining whether a defendant is an 'employer' under Title VII." *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 890 (5th Cir. 2021). However, "[t]his

test is 'necessarily a fact-specific inquiry and is therefore typically applied in a summary judgment context, in which a court is permitted to go beyond the pleadings and examine the state law and the evidence relevant to the employment relationship.'" *Id*. (quoting *Muhammad*, 479 F.3d at 382).

Because factual evidence and findings are necessary to determine whether Avardis is Hardmon's employer for Title VII purposes, Avardis will not be dismissed. *See Muhammad*, 479 F.3d at 383 ("revers[ing] the district court's 12(b)(6) dismissal of Muhammad's Title VII claims and remand[ing] so the district court can make further factual findings about the nature and circumstances of Muhammad's position … and consider whether DCCSCD was his employer for Title VII purposes").

## V
## Conclusion

The defendants' motion to dismiss [18] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent Hardmon's race discrimination and sex discrimination claims are **DISMISSED without prejudice**. The motion is DENIED in all other respects.

**SO ORDERED**, this 30th day of September, 2026.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**